Nos. 102,297
102,663

STATE OF KANSAS, *Appellee*, v. PAMELA SUE HALL, *Appellant*.
(304 P.3d 677)

Opinion filed June 28, 2013.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause, and *Ryan Eddinger*, of the same office, was with her on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal, before us on petition for review, asks whether retail cost or wholesale cost is the appropriate measure of loss for determining restitution for stolen inventory. Our answer is: "It depends." We reject a bright-line rule favoring either retail

or wholesale cost. The sentencing judge must evaluate the evidence, weigh all factors, and consider the facts and circumstances of each case to determine a value that will compensate the victim for the actual loss caused by the defendant's crime.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Pamela Sue Hall was employed for 2 months at an animal clinic owned by Dr. Marc Hardin and his wife, Beverly. During this time, defendant altered computer records to, among other things, erase medical histories and outstanding bills for services performed on her own pets. She also stole inventory from the clinic. The total value of the clinic's missing inventory and defendant's unpaid bills was well in excess of $1,000, but less than $25,000. See K.S.A. 21-3701. A jury convicted defendant of computer crime and theft. The district court granted probation and, later, held a hearing to determine restitution.

Testimony at the hearing from Beverly Hardin established that the total retail value of verifiably missing inventory was $9,645.82. On cross-examination, defense counsel established that the wholesale cost of the inventory—the amount the clinic paid for items verified to be missing—totaled $4,523.50. Defense counsel also established that there were three specific occasions when, after defendant left her employment, a customer attempted to purchase something but was unable to do so because it was missing. The profit on these three items, had the clinic been able to sell them, would have totaled $70.

The sentencing judge imposed restitution payable to the clinic in the total amount of $14,293.11. The portion of this figure attributable to the stolen inventory was based on the retail rather than wholesale price for the stolen inventory. The judge stated that he was "accept[ing] the retail value" of stolen inventory "because otherwise it would deny the Hardins, as any business, their chance to make a profit on items that they sell."

Applying a de novo standard and relying on the United States Supreme Court's 1930 decision in *Illinois Cent. R. Co. v. Crail,* 281 U.S. 57, 50 S. Ct. 180, 74 L. Ed. 699 (1930), the Court of Appeals held that, as a matter of law, retail value was not a proper

measure of restitution because the loss suffered was the wholesale price the clinic had paid for the items. *State v. Hall*, 45 Kan. App. 2d 290, 303-04, 247 P.3d 1050 (2011).

*Illinois Cent.*, distinct in several respects from the instant case, was a civil damages case involving a coal dealer whose carload of coal, purchased at wholesale, was short on delivery. The United States Supreme Court held that the appropriate measure of damage in that case was the wholesale rather than retail value of the coal. It was undisputed that recovery of the wholesale price would fully compensate G.I. Crail, and recovery of the retail price would result in a windfall. Noting the goal was to compensate for injury actually suffered, the Court held that wholesale price was preferred over retail "when, in circumstances like the present, it is clearly the more accurate measure." *Illinois Cent.*, 281 U.S. at 65.

We granted the State's petition for review, which argues that the Court of Appeals' decision effectively stripped sentencing courts of broad statutory discretion to fashion appropriate restitution amounts.

## DISCUSSION

The restitution statute at issue, K.S.A. 21-4610(d) states:

"(d) In addition to any other conditions of probation, suspension of sentence or assignment to a community correctional services program, the court shall order the defendant to comply with each of the following conditions:

(1) Make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime, in an amount and manner determined by the court and to the person specified by the court . . . ."

The parties both characterize the question before us as one of law over which this court has unlimited review. The Court of Appeals agreed. *Hall*, 45 Kan. App. 2d at 301-02.

We have previously noted that there are at least three standards potentially applicable in reviewing challenges to a restitution order. See *State v. Dexter*, 276 Kan. 909, 912-13, 80 P.3d 1125 (2003). Issues regarding the amount of restitution and the manner in which it is made to the aggrieved party are normally subject to review under an abuse of discretion standard. *State v. Hunziker*, 274 Kan. 655, 659-60, 56 P.3d 202 (2002); see also *State v. Ward*, 292 Kan.

541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (defining abuse of discretion). A district judge's factual finding of causation between the crime and the victim's loss is subject to a substantial competent evidence standard of review. *State v. Goeller*, 276 Kan. 578, Syl. ¶ 1, 77 P.3d 1272 (2003); see also *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012) (defining substantial competent evidence). And this court has unlimited review over interpretation of statutes. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

Because the most forgiving of the three standards, abuse of discretion, necessarily ensures that legal error and unsupported factual findings are considered on appeal, the various formulations of the standard of review set forth in our earlier restitution cases do not trouble us.

" ' "Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." ' " *State v. Rodriguez*, 295 Kan. 1146, 1156, 289 P.3d 85 (2012) (quoting *State v. Robinson*, 293 Kan. 1002, 1027-28, 270 P.3d 1183 [2012], *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 [2011]).

On its face, the restitution statute does not require a sentencing judge to rely on wholesale cost rather than retail value in fashioning a restitution award in a theft case such as this. To the extent the Court of Appeals' opinion holds otherwise, it grafts requirements onto the statute that are unsupported by its language, and it impermissibly curtails the discretion liberally granted by our legislature. We hereby reject any notion that the statute provides a hard and fast measure for setting the value of the loss. The question at the heart of this appeal cannot be resolved as a matter of law. Determining the value of an aggrieved party's loss raises an issue of fact.

The measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered. *Hunziker*, 274 Kan. at 662-63; *State v. Applegate*, 266 Kan. 1072, 1079, 976 P.2d

936 (1999); *State v. Chambers*, 36 Kan. App. 2d 228, 241, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006); *State v. Rhodes*, 31 Kan. App. 2d 1040, 1041-42, 77 P.3d 502 (2003) (quoting *Applegate*, 266 Kan. at 1079); *State v. Cox*, 30 Kan. App. 2d 407, 42 P.3d 182 (2002). This is loss "caused by defendant's crime." K.S.A. 21-4610(d)(1).

In property crime cases, Kansas courts have consistently held "fair market value" to be the usual standard for calculating "loss or damage" for purposes of restitution. *Chambers*, 36 Kan. App. 2d at 242; *State v. Baxter*, 34 Kan. App. 2d 364, Syl. ¶ 2, 118 P.3d 1291 (2005). The fair market value of inventory is the price that a willing seller and a willing buyer would agree upon in an arm's length-transaction. *Baxter*, 34 Kan. App. 2d 364, Syl. ¶ 2, 366. But the concept of fair market value is a sticky wicket, unpredictable in practice because it is entirely relative, depending on who is doing the buying and who is doing the selling. See *State v. Behrendt*, 47 Kan. App. 2d 396, 402, 274 P.3d 704 (2012), *petition for rev. filed* May 10, 2012 (exemplifying potential for confusion as to party appropriately identified as buyer and seller for purposes of determining fair market value). The rigid adherence to "fair market value" oversimplifies. While the phrase may capture the best measure of loss in some cases, it may not in all. See *State v. Chambers*, 36 Kan. App. 2d 228, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006) (no discernible market value for used personal lingerie stolen from victim's home); see also *State v. Maloney*, 36 Kan. App. 2d 711, 714-15, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006) (if property lacks calculable fair market value, restitution amount may be based on other factors); *State v. Rhodes*, 31 Kan. App. 2d 1040, 77 P.3d 502 (2003) (same).

As we explain in *State v. Hand*, No. 103,677, this day filed, the restitution statute's language does not restrict a sentencing judge to awarding only the fair market value as restitution in property crime cases. K.S.A. 21-4610(d). Nor does the statute require the judge to consider the fair market value of the property lost before considering other factors. K.S.A. 21-4610(d). Restitution can include costs in addition to and other than fair market value. *State v. Allen*, 260 Kan. 107, 115-16, 917 P.2d 848 (1996). The appro-

priate amount is that which compensates the victim for the actual damage or loss caused by the defendant's crime. And the most accurate measure of this loss depends on the evidence before the district court. As long as the requisite causal connection exists, and "·'the [district] court's determination of restitution [is] based on reliable evidence' " that " 'yields a defensible restitution figure,' " *Hunziker*, 274 Kan. at 660 (quoting *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 [1996]), we will uphold the district judge's discretionary decision. See *Dickens v. State*, 556 So. 2d 782 (Fla. Dist. App. 1990) (trial court best able to determine award that serves goals of restitution; discretion exists to reject fair market value, pursue any other measure of loss that compensates victim).

The restitution amount will inevitably depend on a number of factors. In the context of inventory, for example, these factors might be the retail price, which includes a reasonable profit; the wholesale cost charged to the victim; the setting from which the property was taken; the nature and intended use of the property; whether a market existed for the product and how robust the market was; costs associated with an interruption to this market, which might include costs to maintain stock, electricity, labor, taxes, and shipping; the speed and ease of obtaining replacement items for sale; and any actual lost sales and any associated loss of goodwill. This list of factors is exemplary only and not exclusive. In a different type of case, there may be entirely different factors at play.

Our focus, then, must be on whether the district court judge abused his discretion on the facts before him. We conclude that he did. While the Court of Appeals would have adopted the wholesale amount, the district judge went to the opposite extreme and merely adopted the retail amount. Both approaches suffer from a basic failure to do as the statute directs. Neither fashioned an award in the amount of the actual damage or loss caused by the defendant's crime.

The restitution amount must be vacated and the case remanded for the district court judge to exercise the full measure of his discretion under the law, and *all* of the evidence before him. His goal is to set an amount that will fully compensate the victim "for the damage or loss caused by" Hall's crime. This will involve not only

weighing the retail price and wholesale cost about which Beverly Hardin testified but her other testimony as well. Indeed, at a new hearing on restitution, the district court must weigh and consider any and all evidence presented in regard to the appropriate measure of restitution. For instance, Beverly Hardin testified about various ways that defendant had manipulated the clinic's inventory system and the cost and lost retail value resulting from this sabotage. She also testified that, even in her retail figure, several of the missing items were priced at cost. These included inventory items not intended for resale but for use in the clinic, such as suture materials. Some items qualified as both inventory and supplies; a box of 1,000 syringes, costing the clinic $528.96, could be sold to a client for insulin or allergy injections for approximately $2,000 retail, but the clinic routinely used such syringes for vaccines and injections without accounting for them individually or inventorying them and the cost was built in to the clinic's service charge. Beverly Hardin also testified that there were some items of inventory that the clinic did not track or could not verify, and these were not included in her figures. For example, the company that supplied the clinic with a particular microchip and kit replaced those at no cost as the clinic used them. And a drug company provided a product for the clinic to give away to clients. Whether such products were missing was hard to verify and their cost hard to quantify. All of this evidence and any additional evidence the district judge permits to be introduced should factor into the fashioning of an appropriate award. The burden will remain on the State to marshal the evidence necessary to justify the amount it seeks.

CONCLUSION

Under the restitution calculus outlined in this opinion, we affirm, as right for the wrong reason, the Court of Appeals decision vacating the restitution order and remanding that issue to the district court. The district court shall take further action on restitution consistent with this opinion.