NOT DESIGNATED FOR PUBLICATION

No. 114,475

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KAYLA M. BUTTS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed September 2, 2016. Affirmed in part, vacated in part, and remanded with directions.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Kevin M. Hill*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*:  Kayla M. Butts appeals her sentence following her conviction of one count of theft. Butts claims the district court erred by ordering her to pay restitution for losses not caused by her crime of conviction. She also claims the district court violated her rights under the Sixth and Fourteenth Amendments to the United States Constitution, as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using her criminal history to calculate her sentence without first requiring the State to prove it beyond a reasonable doubt to a jury. We affirm in regards to the second issue but vacate the restitution order and remand for an evidentiary hearing for the district court to properly determine the amount of restitution.

1

In January 2015, Richard and Chestina Randles reported the theft of an AKC-certified Siberian Husky dog. The Randleses had financed the purchase price of the dog through Petland and still owed over $1,000 for the dog. They realized the monthly payments were too much for them to handle, so they posted an advertisement on Craigslist to sell the dog. Butts, identifying herself either as Ashley Timber or Ashley Landon, responded to the Craigslist advertisement. Butts took possession of the dog on January 7, 2015. In return, Butts signed a payment agreement as Landon, agreeing to "take over the payments of the remaining $1,267 balance" on the dog at $160.41 per month. When the Randleses did not receive the first payment from Butts and could not locate her, they reported her to the Brown County Sheriff's Department and the Hiawatha Police Department. Following an investigation, law enforcement identified Butts as the person who had taken possession of the dog. Apparently, Butts had made a deal to sell the dog to someone in Missouri shortly after the transaction with the Randleses.

On February 6, 2015, the State charged Butts with one count of theft of the dog, having a value of more than $1,000 but less than $25,000, a severity level 9 nonperson felony. On March 23, 2015, Butts pled no contest to theft, and the district court accepted her plea. The plea agreement did not address restitution and the amount of the restitution was not discussed at the plea hearing. The presentence investigation report indicated the total restitution was $1,160, but the report did not state how that figure was calculated.

The district court held the sentencing hearing on April 27, 2015. Butts did not object to her criminal history, and the district court determined that she was in criminal history category H. The district court imposed the standard presumptive sentence of 7 months' imprisonment but granted probation with court services for 12 months.

When the district court addressed the subject of restitution, Butts did not object to restitution in the amount of $1,160. However, the State informed the district court that the restitution amount was higher. The Randleses were present at the hearing and the district

court addressed them on the subject of restitution, although no testimony was provided at the hearing. Richard Randles explained that because Butts had not made any payments under the agreement, the four payments for January through April 2015 had been withdrawn from their bank account. Chestina Randles explained that interest and finance charges were accruing on the Petland balance because they were only making minimum payments. As of the sentencing hearing, according to the Randleses, the balance of the Petland account was $1,963.24, and they wanted that amount in restitution.

The district court agreed with the Randleses and ordered restitution in the amount of $1,963.94. Specifically, the judge stated:

> "The Court finds that in this particular case had the defendant done what she said she would do when she forged or used a false name in this particular case, and done what she agreed to do, the value and the amount of the payments would not have been anymore [*sic*] than the contract. But by violating the contract, keeping the dog and not making the payments, she's made the respondents incur a significant amount of financing charges and other costs. So judgment is entered against you in the amount of $1,963.94."

The record does not reflect why the district court ordered restitution in the amount of $1,963.94, as opposed to $1,963.24 requested by the Randleses. Another discrepancy occurred in the journal entry of judgment which indicated the amount of restitution to be $1,963.93. Butts timely appealed her sentence.

On appeal, Butts first claims the district court erred by ordering her to pay restitution for losses not caused by her crime of conviction. Specifically, Butts argues that the only loss the Randleses suffered from her theft of the dog was the dog itself, and any loss suffered as a result of the finance charges the Randleses paid to Petland is unrelated to her theft of the dog. In response, the State argues that Butts failed to properly preserve this issue for our review. As to the merits, the State contends that the amount of the restitution ordered by the district court was attributable to Butts' crime of conviction.

3

In *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016), our Supreme Court stated that an appellate court's consideration of a restitution plan can involve three standards of review:

> "'Questions concerning the "amount of restitution and the manner in which it is made to the aggrieved party" are reviewed under an abuse of discretion standard. [Citation omitted.] A district court's factual findings relating to the causal link between the crime committed and the victim's loss will be affirmed if those findings are supported by substantial competent evidence. Finally, appellate courts have unlimited review over legal questions involving the interpretation of the underlying statutes.' [Citations omitted.]"

Initially, we note that the State argues that Butts failed to properly preserve the restitution issue for our review. The State claims that Butts did not challenge the district court's authority to include the finance charges and interest in the amount of restitution. The record on appeal clearly belies this argument; Butts raised in the district court the argument she now asserts to us, and the district court rejected her argument. Butts properly preserved this issue for appeal.

K.S.A. 2015 Supp. 21-6604(b)(1) requires a sentencing court to "order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Similarly, K.S.A. 2015 Supp. 21-6607(c)(2) allows a court to order restitution "for the damage or loss caused by the defendant's crime" as a probation condition. Our Supreme Court has interpreted these statutes as mandating that "'restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.'" *State v. Dexter*, 276 Kan. 909, 912, 80 P.3d 1125 (2003).

4

Butts directs our attention to *State v. Miller*, 51 Kan. App. 2d 869, 873-75, 355 P.3d 716 (2015), which addressed a situation in which we vacated a district court's order of restitution that included losses caused by actions that were not a direct result of the crimes for which the defendant was actually convicted. In *Miller*, the erroneous restitution order included losses caused by plumbing and electrical damage, but the defendant pled guilty only to charges of burglary and theft of a machete and baby powder. 51 Kan. App. 2d at 869.

For its part, the State cites *State v. Hand*, 297 Kan. 734, 740, 304 P.3d 1234 (2013), in which our Supreme Court held that a restitution award could include a surcharge placed on a homeowner's insurance policy as a result of the theft for which the defendant had pled guilty. The evidence in *Hand* included a letter from the victim's insurance company stating that the surcharge was directly attributable to the theft, so our Supreme Court held that there was substantial competent evidence to support the district court's decision to include the surcharge in the amount of restitution. 297 Kan. at 740.

The State argues that if Butts had not "lied and stolen the subject property, it is very conceivable that the Randles[es] would have found another party from their Craigslist offer to take over their payments with Petland." Because Butts' actions prevented them from doing so, the State contends that the interest and finance charges are appropriate restitution. The State's reliance on Butts' untruthfulness is misplaced. Butts was neither criminally charged with nor convicted of theft by deception, although it appears from the facts that the State could have charged Butts with this specific crime. See K.S.A. 2015 Supp. 21-5801(a)(2). Thus, a reliance on her deception to justify restitution is improper. See *Dexter*, 276 Kan. at 912 (limiting restitution to damages caused by crime of conviction).

Here, the Randleses purchased the dog from Petland under a contract that apparently included an extremely high finance charge. The payments under the contract

5

were $160.41 per month, but apparently a large portion of the monthly payment was applied to interest. When Butts obtained the dog from the Randleses, she signed a written agreement that required her to "take over the payments of the remaining $1,267 balance" on the dog at $160.41 per month. The agreement between the Randleses and Butts said nothing about Butts assuming the contract with Petland, and it said nothing about finance charges. The damage or loss resulting from the interest and finance charges under the contract between Petland and the Randleses was not caused by Butts' crime of conviction.

Kansas courts have consistently held that an item's fair market value is the usual standard for calculating restitution for a victim's loss or damages. See, *e.g.*, *State v. Hall*, 297 Kan. 709, 713, 304 P.3d 677 (2013). The fair market value of property is the price that a willing seller and a willing buyer would agree upon in an arms' length-transaction. 297 Kan. at 713. When there is no readily ascertainable fair market value for personal property taken in a theft, the district court may consider other factors in determining restitution, including the purchase price, condition, age, and replacement cost of the property, as long as the valuation is based on reliable evidence which yields a defensible restitution figure. *State v. Maloney*, 36 Kan. App. 2d 711, Syl. ¶ 5, 143 P.3d 417, *rev. denied* 282 Kan. 794 (2006). Finally, under Kansas law, an owner of the property may express an opinion as to the value of the stolen item. 36 Kan. App. 2d at 713.

Butts was convicted of the theft of the Randleses' AKC-certified Siberian Husky and the amount of the restitution should have been the fair market value of the dog at the time of the theft. Rather than focusing on the fair market value of the dog at the time of the theft, the district court considered extraneous matters of interest and finance charges under the contract between Petland and the Randleses, but this damage or loss was not caused by Butts' crime of conviction. We conclude that the district court's restitution order in the amount of $1,963.94 is not supported by substantial competent evidence. Thus, we vacate the district court's restitution order and remand for an evidentiary

hearing for the district court to properly determine the amount of restitution based on the fair market value of the dog at the time of the theft.

Finally, Butts asserts that the use of her prior criminal history to calculate her sentence without first proving it beyond a reasonable doubt to a jury violated her constitutional rights under *Apprendi*, 530 U.S. 466. As Butts acknowledges, the Kansas Supreme Court clearly decided this issue contrary to her argument in *State v. Ivory,* 273 Kan. 44, 41 P.3d 781 (2002). This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication the court is departing from its previous position, and our Supreme Court has consistently followed *Ivory*. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014); *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013). Thus, we conclude the district court did not err when it used Butts' criminal history to calculate her sentence.

Affirmed in part, vacated in part, and remanded with directions.