NOT DESIGNATED FOR PUBLICATION

No. 118,432

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA WILLIAM BANFIELD SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed November 16, 2018. Affirmed in part, vacated in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., ATCHESON and POWELL, JJ.


PER CURIAM: Joshua William Banfield Sr. challenges the amount of restitution the district court ordered him to pay after he pleaded guilty to stealing a truck. Banfield primarily contends the district court erred by using replacement value, rather than fair market value, in setting the amount of restitution. We affirm the district court's findings on restitution. But we remand so the district court can correct what appears to be an arithmetic error in computing the total amount of restitution.

1

*Factual and procedural background*

Banfield pleaded guilty to stealing a 1985 Ford truck that belonged to Hobbs. Hobbs had improved the truck by doing motor work, adding custom tires and wheels, and purchasing a toolbox. When law enforcement recovered the truck, it had been almost completely stripped. As a result, the State sought $4,396.00 in restitution on Hobbs' behalf.

At Banfield's sentencing hearing, the State presented evidence of the amount of Hobbs' loss through Hobbs' testimony, photographs of the truck before Banfield stole it, and value estimates. Hobbs testified that he had recovered his truck within three days after it was stolen, but he could not drive it because it was missing brakes, brake lines, wheels, tires, and a wing window. The toolbox in the bed of the truck had also been removed. The State submitted an estimate from Big O Tires that totaled the replacement cost for the missing tires, wheels, brakes, and brake lines at $3,600. Hobbs testified that the replacement cost of the four tires he had recently added to the truck was $500 per tire and that that the tires had fewer than 500 miles of use. Hobbs explained that the truck's wheels were "custom" and were two to three weeks newer than the tires. He estimated the cost of the wheels as $150 to $180 per wheel, and he testified that he would have to pay more to replace the stolen lug nuts. The State submitted an estimate from O'Reilly Auto Parts showing the cost of each wheel lug nut as $42.99.

Hobbs testified that the replacement value of the wing window was $350 to $400 plus the cost of labor. Hobbs received an estimate from Kansasland Tire that totaled the replacement cost of the window at $350 plus tax. Hobbs testified that the toolbox was worth $250 to $300. Although he was unable to find the same toolbox that had been stolen from the truck, he had found a similar toolbox online for $339.99. Hobbs received an estimate to restore the truck to the condition it was in before it was stolen—that estimate was more than $4,800.

Banfield called Jenee Rager, an investigator for the Shawnee County Conflicts Office, to testify. Rager told the court that the Kelly Blue book value for a 1995 F-250 was $1,730, but it listed no value for Hobbs' 1985 Ford. Rager admitted that the Kelly Blue book value did not include additions such as custom tires or a toolbox.

At the close of the evidence, the State argued that Hobbs was entitled to the replacement value of his stolen property. Banfield countered that the district court should rely on the fair market value of the truck and consider replacement value only if no specific fair market value were available. Banfield also argued that the State failed to produce receipts for the stolen items and that Hobbs' estimates were not reliable enough to support an order for restitution.

The district court awarded Hobbs $3,541.99, stating: "I am granting $350 for the window; $2,008 for the tires; $744 for the wheels; and $339.99 for the toolbox. And my total was $3,541.99." The district court also sentenced Banfield to 12 months' in jail for the misdemeanor theft. Banfield timely appeals.

*Did the District Court Err in Setting the Restitution Amount?*

The sole issue on appeal is whether the district court erred in setting the amount of restitution. The method of determining the amount of any required restitution is a matter within the discretion of the district court. *State v. Wells*, 18 Kan. App. 2d 735, 737, 861 P.2d 828 (1993). So we review a district court's order on a restitution amount and how it is made for an abuse of discretion. *State v. Hand*, 297 Kan. 734, 736-37, 304 P.3d 1234 (2013). On appeal, the party asserting that the district court abused its discretion has the burden of showing that abuse. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015). Banfield bears that burden here. The State had the burden to present sufficient evidence to the district court to justify the amount of restitution sought. *State v. Hall*, 297 Kan.

3

709, 715, 304 P.3d 677 (2013); see *State v. Cox*, 30 Kan. App. 2d 407, Syl. ¶ 1, 42 P.3d 182 (2002).

Under K.S.A. 2017 Supp. 21-6604(b)(1), "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Additionally, when considering a defendant's terms of probation, the court can require that the defendant "make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime, in an amount and manner determined by the court and to the person specified by the court." K.S.A. 2017 Supp. 21-6607(c)(2).

Banfield argues that the district court erred by using the replacement value instead of the fair market value. Banfield also argues that the evidence the State presented to support the district court's determination was unreliable and insufficient to support the value awarded. We are not persuaded by those arguments.

*Replacement Cost v. Fair Market Value*

The law regarding the measure of restitution amounts has developed in recent years. Traditionally, in property crime cases, Kansas courts applied a bright-line rule requiring use of the fair market value of the property. See, e.g., *State v. Hunziker*, 274 Kan. 655, 664, 56 P.3d 202 (2002); *State v. Hall*, 45 Kan. App. 2d 290, 301, 247 P.3d 1050 (2011), *aff'd* 297 Kan. 709, 304 P.3d 677 (2013); *State v. Maloney*, 36 Kan. App. 2d 711, 714-15, 143 P.3d 417 (2006); *State v. Rhodes*, 31 Kan. App. 2d 1040, 1042-43, 77 P.3d 502 (2003). A different measure could be used only when the district court could not easily determine the fair market value. In that case, it was permissible to "consider other factors including the purchase price, condition, age, and replacement cost of the property." *State v. Phillips*, 45 Kan. App. 2d 788, 795, 253 P.3d 372 (2011). Any award

4

that exceeded the fair market value generally constituted an abuse of discretion. See, e.g., *Hall*, 45 Kan. App. 2d at 302; *Rhodes*, 31 Kan. App. 2d at 1042-43.

But the Kansas Supreme Court corrected us in *Hand*, 297 Kan. at 737-38, and *Hall*, 297 Kan. at 712, which rejected reliance on bright-line rules. As a result, we have recently recognized a greater degree of discretion in the district court's methods of establishing the amount of restitution. See, e.g., *State v. Martin*, No. 117,848, 2018 WL 2994342, at * 2-3 (Kan. App. 2018) (unpublished opinion); *State v. Bowen*, No. 116,296, 2017 WL 4558555, at *4-5 (Kan. App. 2017) (unpublished opinion); *State v. Mannion*, No. 111,970, 2015 WL 3514042 (Kan. App. 2015) (unpublished opinion). As explained by those panels, our Supreme Court rejected the bright-line rule because it oversimplified the process of setting restitution and required a method of calculation not required by statute. *Martin*, 2018 WL 2994342, at *2; see also K.S.A. 2017 Supp. 21-6604(b)(1) (requiring courts to consider "damage or loss caused by the defendant's crime" without specifically requiring consideration of fair market value). What our court and our Supreme Court have highlighted is that the "critical element" in restitution orders is "the causal connection between the crime and the loss." *Hand*, 297 Kan. at 738; *Martin*, 2018 WL 2994342, at *2 (citing *State v. Allen*, 260 Kan. 107, 116, 917 P.2d 848 [1996]). Ultimately, "the appropriate measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered." *Hand*, 297 Kan. at 738.

The panel in *Martin* properly summarized these important principles:

"The sentencing judge thus need not award only the fair market value as restitution in property crime cases. Nor must a sentencing judge consider the fair market value of the property lost before considering other factors. And restitution can include costs in addition to and other than fair market value, particularly when . . . no evidence of the fair market value of the property is presented to the district court. Thus, we have recently found no error when the district court uses replacement cost rather than fair

5

market value to determine the amount of restitution owed. [Citations omitted]." 2018 WL 2994342, at *3.

To the extent that Banfield argues the district court erred in awarding restitution by starting with the replacement value instead of the fair market value for certain stolen items, we disagree.

The trial court is required, above all else, to consider the causal connection of Hobbs' loss to Banfield's crime and award an appropriate amount that reimburses Hobbs' actual loss. See *Hand*, 297 Kan. at 737-38. Banfield does not contend that the district court failed to consider the causal connection here. Before making its decision, the district court considered a range of evidence supporting its restitution order. The record summarized above shows that the district court considered the replacement value of the items stolen from the truck and the fair market value of the truck itself. The district court acted within its discretion by basing its restitution award on these considerations.

*Reliability of the State's Evidence*

Next, Banfield argues that Hobbs' testimony regarding value of the tires, wheels, and toolbox was not reliable. Banfield relies mainly on this court's analysis in *Rhodes*, 31 Kan. App. 2d at 1042-43. In *Rhodes*, this court held that the district court abused its discretion in setting the restitution amount because it relied in part on testimony about the replacement cost of the property rather than the fair market value. But as we explained above, the district court is not bound to such a rigid rule when setting restitution amounts. Every case is different and restitution values are "unpredictable in practice because it is entirely relative, depending on who is doing the buying and who is doing the selling." *Hall*, 297 Kan. at 713.

6

Still, Banfield is correct that "'the court's determination of restitution must be based on reliable evidence which yields a defensible restitution figure.'" *Rhodes*, 31 Kan. App. 2d at 1041 (quoting *State v. Casto*, 22 Kan. App. 2d 152, 154, 912 P.2d 772 [1996]).

The evidence here met that standard. It included testimony from Hobbs and estimates from third-party vendors for costs of parts taken from the stolen truck. The testimony included some fair market values and some replacement values for the property lost. Hobbs' testimony constitutes substantial competent evidence that he incurred at least $3,541.99 in loss. Hobbs' testimony is reliable enough to support the district court's use of replacement values in setting the restitution amount. Hobbs testified that the tires and wheels were new when they were stolen– they had fewer than 500 miles of use. Hobbs also testified that the wheels were two to three weeks newer than the tires. From this testimony, the district court could reasonably assess restitution by using the replacement value.

Banfield suggests that Hobbs' wear on the tires while "mudding" caused the value to depreciate but he fails to cite the record or any authority supporting that assumption. Banfield also makes a similar claim about Hobbs' toolbox, arguing that Hobbs' account of the age of the toolbox was inconsistent and thus unreliable. Hobbs, however, specifically noted that he had purchased the toolbox within three months before it was stolen. That statement was corroborated by Defendant's Exhibit 1, a Facebook picture of the truck without the toolbox, roughly three months before it was stolen. Finally, the State's evidence in the form of estimates from Big O Tires, Orscheln Farm and Home, and online resources also supports Hobbs' testimony and the amount of the loss incurred. We find the district court's determination was based on substantial competent evidence.

7

*Itemized Breakdown of the Restitution Amounts*

Banfield next contends that the district court abused its discretion by adding sums beyond the total restitution costs for the wheels and tires. Banfield notes that the district court ordered $744 for the wheels ($186 per wheel), but Hobbs estimated that the wheels had a value of only $150-180 each. Banfield fails to recognize, however, that Hobbs showed that the wheels would require lug nuts, each of which was estimated to cost $42.99. Thus, the replacement cost of the wheels would exceed $180 per wheel. Similarily, the added $2 per tire that the district court awarded over the $2000 Hobbs testified to could also be attributed to the cost of the lug nuts.

Banfield next argues that no evidence showed Hobbs' wing window was in working condition before the theft. But Banfield is incorrect, as State's Exhibit 1 shows the wing window in question before the theft and it appears to be in good condition, as Hobbs testified.

Finally, Banfield argues that the district court erred in awarding the amount of $339.99 for the stolen toolbox when Hobbs' testified that the value of the stolen toolbox was less—$250-300. But Hobbs testified that he could not find the same toolbox that had been stolen, so he found a similar toolbox priced at $339.99.

We find no abuse of discretion. "Legislative intent is that restitution should make victims whole and provide both deterrents and rehabilitation to the person who commits the crime. The [district] court would not abuse its discretion in making the victim whole by ordering restitution equal to the victim's loss." *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989), *called into doubt on other grounds by Martin*, 2018 WL 2994342, at *3. The record shows that the district court considered several factors before awarding the restitution amount it found appropriate to make the victim whole again.

8

*Arithmetic Error in the District Court's Order*

Lastly, Banfield argues that the district court erred in calculating the amount of restitution imposed from the bench at his restitution hearing. We agree.

Restitution is a part of a criminal defendant's sentence. *Hall*, 298 Kan. at 983 (citing *State v. McDaniel*, 292 Kan. 443, 446, 254 P.3d 534 [2011]). Because restitution constitutes a part of a defendant's sentence, its amount can be set only by a sentencing judge with the defendant present in open court. See 298 Kan. at 986. "Once a legal sentence has been pronounced from the bench, the sentencing court loses subject matter jurisdiction to modify that sentence except to correct arithmetic or clerical errors." *Hall*, 298 Kan. at 983.

Here the district court itemized the amounts of restitution Banfield had to pay: "I am granting $350 for the window; $2,008 for the tires; $744 for the wheels; and $339.99 for the toolbox. And my total was $3,541.99." But the correct sum of those amounts is $3,441.99—$100 less than the district court ordered. Because the district court's intent is clear and the error is purely mathematical, we find no ambiguity in this sentence. But because the court erred in its calculation, we vacate the restitution portion of Banfield's sentence and remand with directions for the district court to file a nunc pro tunc journal entry reflecting the proper amount of restitution—$3,441.99.

Affirmed in part, vacated in part, and remanded with directions for the district court to correct the total amount of restitution ordered.