NOT DESIGNATED FOR PUBLICATION

No. 123,473

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORDEN EUGENE URBANEK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed April 15, 2022. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kelsey M. Moore*, assistant county attorney, *Jeffery Ebel*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., GARDNER, J. and PATRICK D. MCANANY, S.J.

PER CURIAM: Jorden Eugene Urbanek pleaded no contest to certain criminal charges and agreed to pay restitution for all charged crimes. Urbanek now contends that the district court erred in ordering restitution in an amount more than A.R.'s actual losses because A.R.'s medical expenses stemmed partly from acts that Urbanek was not charged with. Essentially, Urbanek claims the State did not meet its burden to prove a causal link between his crimes of conviction and the claims of restitution. Finding no error, we affirm.

1

*Factual and Procedural Background*

After learning of a domestic battery incident on May 15 and May 16, 2019, the State charged Urbanek with aggravated domestic battery, domestic battery, criminal threat, criminal restraint, kidnapping, and sexual battery.

At the preliminary hearing, the victim, A.R., testified she had been in a romantic relationship with Urbanek, whom she lived with, for over one year when she contacted law enforcement. A.R. detailed the events preceding Urbanek's charges. Urbanek forced her to remain in their home and when she tried to leave, he blocked her exit and shoved her away from the door. Urbanek strangled her, struck her in the arm and head, and threatened to kill her and her children.

But it is A.R.'s testimony about her knee injury during the May 2019 incident that is most relevant to this appeal. She testified a message from her friend sparked Urbanek's violence and he ultimately dislocated her knee:

> "When he told me that he told her that I don't spend enough time with him and that is why I'm not allowed to use his phone, he again gets back on top of me, begs me to love him, begs me to, you know, stop being a bitch, in his words, and give him what he wants, and I'm still sitting there and just saying no, and just no, I'm—it's over, I'm done, no, and it infuriates him to the point that he gets up and he grabs the lower part of my right knee, which has already been dislocated by him once before already, and grabs underneath my kneecap and pulls it to the right and it pops right back again. I relocate and set my knee by myself again."

On cross-examination, A.R. clarified that Urbanek had first dislocated the same knee in January—that event causing pain severe enough to prevent her from working yet she did not seek any medical treatment for it. A.R. said her pain from the January

dislocation continued until May, when Urbanek dislocated her knee again and she contacted law enforcement.

A.R. first sought medical treatment for her knee after the May incident. She testified:

- an MRI showed "a hairline fracture in the bone that connects the calf bone and the thigh bone";
- she had a torn meniscus, a destroyed kneecap, and destroyed cartilage; and
- she was scheduled for knee surgery "for them to put 17 screws on each side of my knee, and replace the kneecap, since it is destroyed."

After the preliminary hearing, the State amended its complaint to add an aggravated battery charge based on A.R.'s knee injury. The district court held a second preliminary hearing and A.R. testified about the events leading up to her initial knee injury in January 2019.

A.R.'s attending physician, Timothy Hawkes, also testified. He conducted a physical examination and reviewed the MRI results of A.R.'s kneecap. Hawkes explained A.R. had tried non-operative treatments before surgery but she remained in pain. Hawkes recommended and conducted a surgery—a diagnostic arthroscopy with an examination—because A.R. was in pain, and found that "she had a loose piece of cartilage inside of her knee from these dislocations." Based on what Hawkes saw during the arthroscopy, he recommended physical therapy and other treatment regimens to help A.R.

Ultimately, Urbanek pleaded no contest to four amended counts: aggravated domestic battery, battery, criminal threat, and attempted aggravated battery. In keeping with the plea agreement, the State agreed to dismiss the remaining charges and Urbanek

agreed to "pay restitution damages and medical bills on all counts, including those dismissed."

Before sentencing, the State filed a notice of restitution seeking $1,800 payable to A.R., and $14,682.72 to reimburse the Kansas Crime Victims Compensation Board (Board) for payments it had made for A.R.'s medical expenses. Urbanek objected, so the district court held a joint sentencing and restitution hearing. At that hearing, the State submitted exhibits detailing the Board's payments of medical bills for A.R., totaling $14,682.72.

The district court ordered Urbanek to reimburse the Board $14,682.72 because Hawkes' testimony showed A.R. had knee surgery "because of her pain level, which was the direct result of Mr. Urbanek's actions on May 16 of 2019." The district court did not, however, order Urbanek to pay the $1,800 requested for the criminal damage to property charge, reasoning that it lacked authority to order restitution for damage to property "because that was not charged."

Based on his criminal history score of H, the district court sentenced Urbanek to a controlling 38 months' imprisonment but granted 24 months' probation.

Urbanek appeals.

*Did the District Court Err in Ordering Restitution?*

The sole issue on appeal is whether the district court erred by ordering Urbanek to reimburse the Board for medical bills in the amount of $14,682.72. He agrees that this is the correct amount of medical expenses that the Board paid A.R. relating to her knee injuries but he claims his charged criminal conduct did not cause all those expenses. Urbanek does not dispute that he caused A.R.'s May 2019 knee injury that in part

4

necessitated A.R.'s surgery. But Urbanek contends he should not be financially responsible for the expenses related to her knee injury in January because he was not charged with any crimes based on that conduct—all his charges were from acts in May. In other words, Urbanek claims that A.R. had a preexisting injury that he was not charged with having caused, so he should not be responsible to pay for it.

We review some general law. Upon a finding of the defendant's guilt, the district court must conduct a hearing to establish restitution when requested by the victim. K.S.A. 2020 Supp. 22-3424(d)(1). When a defendant is sentenced to a term of imprisonment, "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 2020 Supp. 21-6604(b)(1). A district court must base its restitution determination "'on reliable evidence which yields a defensible restitution figure.'" *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 (2002). The appropriate restitution amount compensates the victim for the actual loss caused by the defendant's crime. If a causal connection exists and the district court's determination stems from reliable evidence that "'yields a defensible restitution figure,'" this court will uphold the district court's discretionary decision. *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 (2013).

The main issue on appeal relates to causation. A causal link between a defendant's crime and the restitution must satisfy the traditional proximate cause elements: cause-in-fact and legal causation. "[T]hese elements limit a defendant's liability to '"those consequences that are *probable* according to ordinary and usual experience."'" *State v. Arnett*, 307 Kan. 648, 654, 413 P.3d 787 (2018). Causation-in-fact requires proof that it is more likely than not the result would not have happened but for the defendant's conduct. 307 Kan. at 654.

"Legal cause limits the defendant's liability even when his or her conduct was the cause-in-fact of a result by requiring that the defendant is only liable when it was

5

foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable. When causation is based on a chain of events, an intervening cause may absolve the defendant of liability. However, '[i]f the intervening cause is foreseen or might reasonably have been foreseen' by the defendant, his or her conduct may still be considered to have proximately caused the result. [Citation omitted.]" 307 Kan. at 655.

This court reviews a district court's factual findings on the causal link between the crime committed and the victim's losses for substantial competent evidence. 307 Kan. at 653. Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

Urbanek argues a lack of substantial competent evidence supporting a causal link between his crimes of conviction and the district court's order to reimburse the Board. He contends his charged conduct did not cause the full injury that led to bills in the amount of $14,682.72 because some of this amount is due to A.R.'s knee injury in January.

The district court did not intend to order restitution for medical expenses resulting from Urbanek's uncharged conduct in January that injured A.R.'s knee. Rather, it relied on Hawkes' testimony to find he conducted surgery on A.R.'s knee "because of her pain level, which was the direct result of Mr. Urbanek's actions on May 16 of 2019" and the requested $14,682.72 was "all reasonably related to those charges to which Mr. Urbanek either pled or agreed to pay restitution if they were dismissed."

We thus review the evidence to see if it supports that conclusion. A.R. testified her knee was first injured during an argument with Urbanek in January 2019. She missed work due to the pain but she did not seek medical treatment. Not until Urbanek injured her knee the second time, in May 16, 2019, did she seek medical care. When she arrived

6

at the emergency room, the medical staff confirmed she had dislocated her knee and properly relocated it.

After seeking emergency treatment, A.R. sought treatment from Hawkes. We focus on his testimony, as did the district court. Hawkes testified that non-operative treatments were not easing A.R.'s pain, so he recommended a diagnostic arthroscopy with an examination of the kneecap under surgery. Hawkes testified that surgery is sometimes required to examine an injured kneecap because these injuries can be "quite painful to examine in the office." He then clarified that he recommended surgery because A.R. was in pain severe enough that he could not examine her knee without surgery, and because she was still in pain after trying non-operative, conservative treatments.

Hawkes was asked, but he refused to opine on when A.R.'s knee injuries occurred. Hawkes explained it is "really hard to tell" when a knee injury occurred based on an MRI scan "because inflammation could . . . look like an acute injury." On cross-examination, the State asked Hawkes if he had seen anything that could suggest how the injury occurred. Again Hawkes refused to opine, testifying:  "No. I can't make that determination. I wouldn't know how to. So, I mean, you can dislocate your kneecap doing a lot of different things. I wasn't there, I just have to go on what she tells me."

Hawkes did say, however, that a loose piece of cartilage floating around in the knee "is a common injury after a knee dislocation. The kneecap dislocates, and as it comes back, it knocks off a piece of cartilage." Although he refused to speculate on when A.R.'s injury occurred, he testified it was a "definite possibility" the knee injury had occurred as A.R. had testified:

> "Yeah, I mean, you can tell somewhat of chronicity of an injury but . . . I cannot put a date on it. I can't say this happened two weeks ago, or two months ago, or even a

year ago. It's just sometimes you can tell that very clearly. In this case, it was I'd say, yeah, it's definite possibility that [the injury] happened—it happened how she said."

Urbanek analogizes his situation to a person whose dented car was stolen. Under those circumstances, one may use "fair market value" as the standard for calculating restitution for property crimes, see *Hall*, 297 Kan. at 713. But this analogy is legally inappropriate here, as Urbanek cites no case applying that property damage standard to person crimes. We find it more appropriate to rely on the law about a person's pre-existing injury. In civil cases, the district court often instructs the jury about an injured party's pre-existing condition:

> "Plaintiff is not entitled to recover for any physical ailment, defect, or disability that existed prior to the occurrence. However, if the plaintiff had a preexisting physical ailment, defect or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the plaintiff is entitled to recover for such increased suffering and disability." PIK Civ. 4th 171.43

We apply that law here.

Substantial competent evidence supports the district court's finding that Urbanek's actions in May 2019—leading to the charged crimes—caused A.R.'s medical expenses. A.R. sought medical treatment only after Urbanek dislocated her knee in May 2019. Although she may have had preexisting knee injuries, she did not seek medical treatment for any pain or injury caused by Urbanek's January acts. Not until he reinjured A.R.'s same knee in May did her pain or disability increase to the point she sought medical attention. She tried conservative treatments, but they did not relieve her pain, so Hawkes believed investigatory surgery was necessary. The medical bills on which the restitution order is based all relate to that surgery.

8

The record shows that it is more likely than not that but for Urbanek's charged criminal acts against A.R. in May, A.R.'s knee would not have required surgery. Causation-in-fact is thus met. And the record shows legal cause as well, because A.R.'s knee injuries in May and her resulting surgery were a foreseeable result of Urbanek's criminal acts in May. See *Arnett*, 307 Kan. at 656. Because Urbanek aggravated A.R.'s knee injury by his charged criminal acts in May, and as a result the knee required surgery, the amount of restitution properly includes the amount of A.R.'s medical expenses for her surgery.

The rest of Urbanek's argument challenges whether the restitution order compensated A.R. for the actual loss caused by Urbanek's crime. Urbanek frames his issue as a challenge to the "actual-loss limitation." See *Hall*, 297 Kan. at 712 ("The measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered."). Urbanek contends the restitution order compensated for A.R.'s injuries in both January 2019 and May 2019. But this argument merely rephrases his assertion that the State failed to prove a causal link between his crimes of conviction and his restitution order. The requisite causal connection exists.

The sole remaining determination is whether the court's decision was based on reliable evidence. "As long as the requisite casual connection exists, and '"the [district] court's determination of restitution [is] based on reliable evidence"' that '"yields a defensible restitution figure,"' we will uphold the district judge's discretionary decision. [Citations omitted.]" *Hall*, 297 Kan. at 714.

Those requirements are met here. Urbanek concedes as much, as he does not contend they are not met. And at the restitution hearing, A.R. testified about her medical bills, and showed the Board's payment of those expenses by an admitted exhibit. A.R. confirmed the medical bills were for the injuries pertaining to Urbanek's actions in May 2019. She testified about the various details of the medical bills, stating the line items

were "X-rays, scans, doctor's appointment, my surgery, and the details of what was charged for my surgery." She also confirmed these medical bills were submitted to, and later paid by the Board. The district court's restitution figure was thus based on reliable evidence that yielded a defensible restitution figure.

We thus uphold the district court's discretionary decision to order Urbanek to reimburse the Board for its $14,682.72 in payments for A.R.'s medical expenses.

Affirmed.