NOT DESIGNATED FOR PUBLICATION

No. 124,030

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLE RAY CAZEE-WATKINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON GEIER, judge. Opinion filed October 7, 2022. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY LAHEY, S.J.

PER CURIAM: Kyle Ray Cazee-Watkins appeals the district court's restitution order following his conviction of aggravated battery and other charges. Cazee-Watkins claims: (1) the district court erred when it ordered him to pay $3,150 for the damage to the victim's car and (2) Kansas' criminal restitution statutory scheme violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). We reject Cazee-Watkins' claims and affirm the district court's judgment.

1

In October 2019, the State charged Cazee-Watkins with nine felonies and one misdemeanor. Several of these charges related to a car crash that Cazee-Watkins caused while trying to flee from a police officer. Ultimately, Cazee-Watkins agreed to plead guilty to one count of felony aggravated assault, one count of criminal possession of a weapon, and one count of aggravated battery in exchange for a dismissal of the remaining charges. The aggravated battery count derived from the car wreck. As part of his plea agreement, Cazee-Watkins agreed "to pay all verifiable restitution including restitution for dismissed charges."

At sentencing, the district court found Cazee-Watkins' criminal history score to be an A and sentenced him to 48 months' imprisonment followed by 12 months' postrelease supervision. The State then asked the court to order $8,940.03 in restitution on behalf of the victim of the car crash, Amanda Hall. This figure represented the bill for her ambulance ride and the value of the replacement car that she bought after the wreck. Cazee-Watkins asked the court to reserve ruling on the restitution issue and requested a separate hearing on the matter, which the court granted.

At the restitution hearing, Hall testified about the losses she incurred as a result of the wreck. Hall testified that she was driving with her husband and son, when Cazee-Watkins crashed into them in an intersection. She described the damage to her 2018 Dodge Journey, testifying, "The front end was smashed in and it was totaled, It was beyond repair for us to get it fixed." Hall testified that she had taken out a loan for $27,000 to purchase the car and had been making monthly payments of $350 for "at least eight or nine months." A few weeks after the wreck, Hall bought a 2015 Town & Country as a replacement car for $7,745.83 because she was not "going to be able to use the Journey anymore and [she] needed transportation." Hall did not have insurance coverage when the accident occurred, so the replacement car was an out-of-pocket expense. Hall

was also taken to the hospital in an ambulance after the accident, and although her health insurance covered most of the bills, she was left with a bill of $1,194.20.

After the evidence was presented, the State requested that Cazee-Watkins be ordered to pay Hall for the value of her replacement car, $7,745.83, and $1,194.20 for the cost of her ambulance trip, for a total of $8,940.03. Cazee-Watkins did not contest the ambulance bill, but he argued that the loss for Hall's totaled Dodge Journey should be "at the maximum, what she invested in the vehicle." Alternatively, Cazee-Watkins contended that the fair amount of restitution for Hall's car should be "zero because . . . she would have paid $350.00 for those eight months if she was leasing it."

The district court ordered Cazee-Watkins to pay $1,194.20 for the ambulance bill. As for the Dodge Journey, the district court rejected the State's request of $7,745.83 for the replacement cost of the new car, finding that amount was not the proper measure of damages. Instead, the district court found the proper measure of damages was Hall's "equity" in the Dodge Journey, which the court calculated as $3,150 based on her $350 monthly payment for nine months. Incorrectly adding the two amounts, the district court ordered total restitution of $4,354.20, but the journal entry of judgment correctly states the total restitution as $4,344.20. The district court ordered Cazee-Watkins to begin paying restitution while in prison at the rate of $20 per month, with that amount rising to $100 per month upon his release. Cazee-Watkins timely appealed the district court's judgment.

On appeal, Cazee-Watkins challenges only the district court's restitution order. He claims the district court erred when it ordered him to pay $3,150 for the damage to Hall's car. He also claims Kansas' criminal restitution statutory scheme violates *Apprendi*. Cazee-Watkins does not challenge the district court's payment plan for the restitution.

3

DID THE DISTRICT COURT ERR IN ORDERING CAZEE-WATKINS TO PAY $3,150 IN RESTITUTION FOR HALL'S DODGE JOURNEY?

Cazee-Watkins alleges that the portion of the district court's restitution order for Hall's Dodge Journey was erroneous in two respects. First, he asserts that the causal link between his crime and Hall's damage or loss is not supported by substantial competent evidence. Second, he disputes the amount of damages ordered by the district court. The State maintains that substantial competent evidence supports the causal link between Cazee-Watkins' conduct and Hall's loss of equity in her vehicle and that the district court did not abuse its discretion in crafting the amount of restitution.

Appellate review of an order directing a criminal defendant to pay restitution can involve three standards of review. Appellate courts review the "'amount of restitution and the manner in which it is to be made to the aggrieved party'" for abuse of discretion. *State v. Martin*, 308 Kan. 1343, 1349, 429 P.3d 896 (2018). Appellate courts affirm the district court's factual findings underlying the causal link between the crime and the victim's loss if substantial competent evidence supports these findings. 308 Kan. at 1349. Finally, appellate courts exercise unlimited review of legal questions involving the interpretation of the restitution statutes. 308 Kan. at 1350.

*Causal link between Cazee-Watkins' crime and Hall's loss*

Cazee-Watkins contends that the district court's restitution is erroneous because substantial competent evidence does not support a causal link between his actions and Hall's loss of her car. "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). When analyzing whether substantial competent evidence supports a court's ruling, appellate courts will not reweigh the evidence or assess the credibility of witnesses. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

4

K.S.A. 2021 Supp. 21-6604 sets out the dispositions that a district court may adjudge when a person is convicted of a crime, including restitution. And, K.S.A. 2021 Supp. 21-6604(b)(1) provides that a district court "shall order the defendant to pay restitution, which shall include, but not be limited to, *damage or loss caused by the defendant's crime*." (Emphasis added.) Our Kansas Supreme Court has held that the statute does not require "the crime of conviction have a *direct* causal link to any damages." *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018). Rather "the causal link between a defendant's crime and the restitution damages for which the defendant is held liable must satisfy the traditional elements of proximate cause: cause-in-fact and legal causation." 307 Kan. at 655. To establish causation-in-fact, there must be proof that it is more likely than not that, but for the defendant's conduct, the victim's damages would not have occurred. 307 Kan. at 654. Even if a defendant's conduct is the cause-in-fact of the victim's loss, legal causation restricts liability to situations in which "it was foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable." 307 Kan. at 655.

Cazee-Watkins pled guilty to felony aggravated battery under K.S.A. 2019 Supp. 21-5413(b)(2)(B) for recklessly causing bodily harm to Hall with his car. Although he points out that the statutory language of the offense does not contemplate harm to property, Cazee-Watkins concedes that the act underlying his conviction "might satisfy the requirement of direct or proximate cause for the damage to the Journey." Indeed, substantial evidence shows that Cazee-Watkins' conduct was the cause-in-fact of Hall's loss of her car—but for his decision to recklessly drive through an intersection while fleeing police, Hall's Dodge Journey would not have been totaled. The evidence was also sufficient to establish legal causation as it is reasonably foreseeable that driving through an intersection at high speeds would create a risk of harm and that the result of such conduct could be a car accident. There is thus no question that Cazee-Watkins' criminal conduct was the proximate cause of Hall's car being totaled.

5

Despite the existence of both cause-in-fact and legal causation, Cazee-Watkins argues that intervening events—that Hall had not fully paid off her car and was not covered by auto insurance at the time of the wreck—should absolve him of liability. Cazee-Watkins first points out that Hall did not fully own the vehicle when it was destroyed. He asserts that it cannot be said that Hall would have continued making the required loan payments on the car if the wreck had not occurred. But the district court did not order restitution based on potential future payments or Hall's full ownership of the vehicle, it based restitution on the amount of money that Hall had paid on the car loan at the time of the accident. Moreover, the fact that another driver on the road may not own the car they are driving outright is by no means unforeseeable. Hall did not need to own the vehicle outright to have sustained a loss.

Cazee-Watkins also asserts that Hall's "failure to have legally required insurance was the ultimate cause of the loss of the [Dodge] Journey without recompense and which deprived her of the equity in [her car.]" This argument misses the mark. Cazee-Watkins concedes in his brief that vehicles need only have liability insurance. See K.S.A. 40-3104. But liability insurance would not have covered the loss to Hall's car. Cazee-Watkins also points out that "most companies who provide loans require a greater level of insurance, such as comprehensive and collision coverage." The record does not reflect whether Hall had to have casualty insurance on the vehicle because of her loan. But even if Hall had bought insurance covering damage to the vehicle, then the restitution would have been owed to the insurance company rather than to Hall. See *State v. Robison*, 58 Kan. App. 2d 380, 393-94, 469 P.3d 83 (2020) (affirming restitution to officer's insurance carrier for paying medical bills even though officer was the direct victim of the crime), *aff'd* 314 Kan. 245, 496 P.3d 892 (2021), *cert. denied* 142 S. Ct. 2868 (2022).

The district court's findings of a causal link between Cazee-Watkins' conduct, Hall's medical bills, and the loss of her car are supported by substantial competent evidence that a reasonable person would accept. Hall's lack of insurance and the fact that

6

she was still making payments on the car do not amount to an intervening cause severing the causal link between Cazee-Watkins' criminal conduct and Hall's loss.

*The amount of damages*

Cazee-Watkins next argues that the district court's conclusion that Hall suffered a loss of $3,150 for the Dodge Journey constituted an abuse of discretion. The State responds that Cazee-Watkins fails to show that no reasonable person could agree with the district court's determination of the amount of restitution.

The same rigidness and proof of value required in a civil action does not apply to determining restitution in a criminal case. *State v. Applegate*, 266 Kan. 1072, 1079, 976 P.2d 936 (1999). An appellate court should not disturb the district court's restitution award so long as it "'[is] based on reliable evidence'" and "'yields a defensible restitution figure.'" *State v. Hall*, 297 Kan. 709, 714, 304 P.3d 677 (2013) (quoting *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 [2002]).

"The measure of restitution to be ordered is the amount that reimburses the victim for the actual loss suffered" from the defendant's criminal act. *Hall*, 297 Kan. at 712. Kansas courts have consistently held that the usual standard for calculating "'loss or damage'" of property is "'fair market value,'" i.e., how much the property lost would have commanded in an exchange between a willing seller and buyer. 297 Kan. at 713. But the fair market value approach is not the only method to calculate restitution, and it is not specifically required under the language of the restitution statute. See K.S.A. 2021 Supp. 21-6604; *Hall*, 297 Kan. at 713-14. Rather, "[r]estitution can include costs in addition to and other than fair market value" and "[t]he appropriate amount is that which compensates the victim for the actual damage or loss caused by the defendant's crime. And the most accurate measure of this loss depends on the evidence before the district court." 297 Kan. at 713-14.

7

The district court did not use a fair market value approach in assessing Hall's loss of her vehicle. Instead, it determined that the appropriate measure of damages was the "equity" Hall had in the Dodge Journey when Cazee-Watkins destroyed it. The district court calculated the equity as $3,150 based on her $350 monthly loan payment for nine months. As Cazee-Watkins points out, "equity is generally not an amount equal to the amount that you have paid on the loan." We agree that equity is better defined as the fair market value of the car less the balance of the loan. Although the district court did not apply the proper definition of equity, this fact does not mean the court erred in determining restitution.

The court crafted a remedy to compensate Hall for the loss of her equity in the Dodge Journey that was directly caused by Cazee-Watkins' conduct. Hall testified that she had received a $27,000 loan to purchase the Dodge Journey and that she had made "eight or nine" payments of $350 by the time the accident occurred. The district court credited Hall's testimony and calculated her loss of equity as the amount of her monthly payments multiplied by the number of months that she had made payments to arrive at $3,150. This calculation was properly based on the facts and circumstances of the case.

In sum, the district court's restitution award for the Dodge Journey was based on reliable evidence presented at the hearing and represents a defensible restitution figure for Hall's loss. *Hall*, 297 Kan. at 714; *Hunziker*, 274 Kan. at 660. In fact, Cazee-Watkins argued at the restitution hearing that the loss for Hall's totaled Dodge Journey should be "at the maximum, what she invested in the vehicle." We find the $3,150 award for Hall's loss of the Dodge Journey was reasonable and did not constitute an abuse of discretion.

DOES KANSAS' CRIMINAL RESTITUTION STATUTORY SCHEME VIOLATE *APPRENDI*?

For the first time on appeal, Cazee-Watkins asserts that Kansas' restitution statutes violate his right to a jury trial under the Sixth Amendment to the United States

Constitution. More specifically, he argues that restitution is punishment and, therefore, the restitution statutes violate his jury trial right because they allow the court to make a finding of fact that increased the penalty for his crime beyond the prescribed statutory maximum. See *Apprendi*, 530 U.S. at 476.

Because the right to a jury trial is a fundamental right under the Sixth Amendment, this court may reach the merits of Cazee-Watkins' constitutional argument even though he did not raise it before the district court. *State v. Rizo*, 304 Kan. 974, 979-80, 377 P.3d 419 (2016). Determining a statute's constitutionality is a question of law subject to unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

Cazee-Watkins' argument fails under the recently decided cases of *State v. Brown*, 314 Kan. 292, 498 P.3d 167 (2021), *Robison*, 314 Kan. 245, and *State v. Arnett*, 314 Kan. 183, 496 P.3d 928 (2021), *cert. denied* 142 S. Ct. 2868 (2022). In these cases, our Kansas Supreme Court addressed arguments identical to the one advanced by Cazee-Watkins, and in each case the court found that restitution does not implicate a defendant's Sixth Amendment right to a jury trial as contemplated by *Apprendi* and its progeny. *Brown*, 314 Kan. at 308; *Robison*, 314 Kan. at 249-50; *Arnett*, 314 Kan. at 186-88. This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We have no reason to find that our Supreme Court is departing from its holdings in these recent cases.

Affirmed.