NOT DESIGNATED FOR PUBLICATION

No. 128,187

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAYMES SHAWN BRAZDA,
*Appellant.*

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Submitted without oral argument. Opinion filed February 20, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and GARDNER, JJ.

PER CURIAM:  James Shawn Brazda pleaded no contest to a non-residential burglary and the district court ordered him to pay $7,500 in restitution. Brazda appeals, claiming the amount is not supported by sufficient evidence and that the district court should have ordered the amount to be paid jointly and severally with his accomplice, Jeremy Wright. Finding no error, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2024, police officers caught Brazda and Wright taking items from a non-residential building in Pittsburg. The building was previously a residence owned by a man who died less than a year earlier, but it had sat mostly vacant for several months leading up to the burglary. When police arrived at the house, Brazda was carrying copper pipes, which he admitted he had stolen. Wright admitted he took coins and dollar bills.

In an amended complaint, the State charged Brazda with one count of non-residential burglary. Wright was charged in a separate case. Brazda entered a no contest plea to his offense. Under his plea agreement, Brazda agreed to pay $500 in restitution for a separate criminal case (22CR293) and the State dismissed that case. The parties did not negotiate any terms related to restitution in this case.

At the plea hearing, the State established a factual basis for Brazda's offense, stating Brazda was holding a bag of copper when police arrived at the house and "admitted to the offense." The district court accepted Brazda's plea and sentenced him to 24 months' probation and a suspended term of 16 months' imprisonment. The district court then ordered Brazda to pay $7,500 in restitution and denied Brazda's request to order it was owed jointly and severally with Wright.

Brazda appeals, challenging solely the restitution order. After filing his notice of appeal, Brazda requested additions to the record to provide this court with information related to the restitution ordered in Wright's case. That information shows that Wright's restitution was ordered jointly and severally with Brazda.

ANALYSIS

The sole issue on appeal is whether the district court properly exercised its discretion in deciding restitution, including the $7,500 amount and manner in which it was owed.

Brazda first claims the evidence was not sufficiently reliable to yield a defensible restitution figure, so the district court abused its discretion by assessing the amount of $7,500 against him.

An appellate court reviews the "'amount of restitution and the manner in which it is made to the aggrieved party'" for an abuse of discretion. *State v. Martin*, 308 Kan. 1343, 1349, 429 P.3d 896 (2018). A judicial action constitutes an abuse of discretion if: "(1) it is arbitrary, fanciful, or unreasonable . . . ; (2) it is based on an error of law . . . ; or (3) it is based on an error of fact." *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). "Substantial competent evidence must support every restitution award." *State v. Smith*, 317 Kan. 130, 139, 526 P.3d 1047 (2023).

K.S.A. 21-6604(b)(1) requires that restitution ordered in a criminal case be based on "damage or loss caused by" the crime. Restitution may be allowed for some tangential costs linked to the crime. See *State v. Alcala*, 301 Kan. 832, 839-40, 348 P.3d 570 (2015). But ultimately, "[t]he appropriate amount is that which compensates the victim for the actual damage or loss caused by the defendant's crime." *State v. Younger*, 320 Kan. 98, 140, 564 P.3d 744 (2025) (citing *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 [2013]).

The State bears the burden of proof, and an appellate court will uphold an award when reliable evidence yields a defensible restitution figure. *Hall*, 297 Kan. at 714-15; see *State v. Dailey*, 314 Kan. 276, 278-79, 497 P.3d 1153 (2021).

3

*Sufficient Evidence Supports the Amount Ordered.*

Brazda asserts that the evidence admitted in the district court was insufficiently reliable to prove the amount of actual damages because Janet Glaser, the owner of the building, lacked personal knowledge that the costs of labor and materials would be $7,500. Glaser consulted no one that could provide any information related to her property but merely relied on general information from the internet about the broad range of costs that homeowners may pay to have copper piping installed. Brazda thus asks us to find that no restitution should have been ordered, despite his damage to the home.

The State counters that Glaser's testimony alone was sufficient to establish the cost of repairing her property. And because the district court accepted Glaser's testimony, this court must acknowledge that Glaser's testimony was credible. We thus review Glaser's testimony at the restitution hearing to see if it was sufficient to meet the State's burden.

*Glaser's testimony*

Glaser explained that the house was unoccupied at the time of Brazda's offense but had previously been owned by her brother, who died in April 2023. Glaser testified that before Brazda and Wright were caught at the house, other thefts had occurred. She checked on the property periodically and at one point noticed that a sliding door to the house was sometimes left open, so she had the door boarded up.

Glaser testified that a neighbor alerted her about Brazda and Wright being in the house in January 2024. She checked the house after the police responded to the incident and found that the copper piping had been pulled out. This caused significant damage, including to the duct work, and Glaser had to shut off the water to the house. The pipes that were being loaded when the officers arrived were left beside the driveway. Brazda

and Wright also took a valuable coin collection. Some guns were also missing but Glaser was unsure when those had been taken.

When asked about the cost of her damages, Glaser explained that she could not "get a plumber in . . . [the] basement area . . . because of the damage" caused by the pipes being removed. She could not afford to have the pipes replaced and was unsure if she could afford to pay for an estimate. The insurance on the house had expired days before the incident, so insurance did not cover any damage.

Glaser gave estimates for the labor and materials based on research that she had done online. She found that labor for the installation would cost between $50 and $200 per hour, and materials for a 2,000 square-foot house would cost between $3,000 and $16,000. Another estimate "from Forbes" on May 28, 2024, suggested a range of $1,500 to $15,000, with most homeowners paying around $7,500. When asked to pinpoint the exact cost that Glaser expected to pay, she testified that $7,500 would be a low estimate.

For the coin collection, Glaser estimated a value of $50,000. An officer had explained to her that the coins were likely sold for around $2,000, and that the judge in Wright's case had ordered him to pay her $1,500 in restitution.

At the sentencing hearing, before the district court determined the restitution award, Brazda recommended that the court review the probable cause affidavit. The district court did so and found that Brazda and Wright had two distinct sets of property on them when police arrived. Wright had coins and loose dollar bills, which he admitted came from inside the house, and Brazda was carrying copper pipes that he had removed from inside. The pipe that Brazda was carrying at the time was eventually taken back into the residence.

The district court found it unusual to have this much evidence about specific items taken by each accomplice. The district court found that this explained the basis for the restitution ordered in Wright's case and guided how restitution should be decided here— Judge Brunett ordered a restitution amount reflecting the loss from coins taken by Wright, so he would order a restitution amount to reflect Brazda's damage from removing the pipes. Accordingly, the district court ordered restitution in the amount of $7,500, reflecting the "approximate cost . . . to replace the copper piping in the house." But the district court denied Brazda's request to order restitution jointly and severally with Wright.

*Legal authorities*

Restitution is controlled by K.S.A. 21-6604. When, as here, a person is convicted of burglary, K.S.A. 21-6604(b)(1) states that restitution "shall include the cost of repair or replacement of the property that was damaged, . . . reasonable labor costs of any kind, reasonable material costs of any kind and any reasonable costs that are attributed to equipment that is used to abate or repair the damage to the property." Brazda also cites Kansas' theft statute, K.S.A. 21-5801. This statute states that when the stolen property is a "regulated scrap metal," such as copper, the value of the property is "the cost to restore the site of the theft . . . to its condition at the time immediately prior to the theft." K.S.A. 21-5801(c)(5); see K.S.A. 50-6,109(b)(2)(A)(ii) (identifying copper as regulated scrap metal).

Restitution in a burglary case is thus decided according to the cost necessary to restore the property to its condition before the crime. This includes the cost of labor, materials, and tangential costs caused by the crime. The parties agree that this is the appropriate standard for assessing restitution, but they dispute whether Glaser's testimony provided sufficient evidence of the costs associated with her property.

6

The State asserts that "[a] property owner's statements are sufficient to establish the cost a defendant's crime caused when establishing restitution," citing three cases: *State v. Maloney*, 36 Kan. App. 2d 711, 715-16, 143 P.3d 417 (2006); *State v. Richardson*, No. 116,374, 2018 WL 559802, at *11 (Kan. App. 2018) (unpublished opinion); and *State v. Vandorn*, No. 109,640, 2014 WL 2871320, at *8 (Kan. App. 2014) (unpublished opinion). In line with these decisions, this court has long recognized that an owner of the property may express an opinion as to the value of the stolen item. *Maloney*, 36 Kan. App. 2d at 713 (citing *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 [1989]).

And the victim's testimony may be the primary or only evidence used to determine the amount of loss, and thus restitution. See, e.g., *State v. Dipman*, No. 118,493, 2019 WL 2063647, at *3-4 (Kan. App. 2019) (unpublished opinion) (upholding $7,725 in restitution based on victim testimony about stolen guns that were unrecovered or recovered but damaged). In *Maloney*, this court affirmed an order that relied on the victim's testimony regarding the amount of certain household items taken from her home. 36 Kan. App. 2d at 715-16. The panel in *Richardson* affirmed a $400 restitution order in a real property case for damages caused to a door frame where the victim testified about the amount that he spent to personally repair the frame. 2018 WL 559802, at *11. And in *Vandorn*, this court affirmed an order supported by a bill of sale for vehicles that the defendant took and the owner's testimony about the estimated price of those vehicles at the time of their taking. 2014 WL 2871320, at *4.

Brazda argues that *Maloney*, *Richardson*, and *Vandorn* are distinguishable because the property owners in those cases had personal knowledge that the district court could reasonably rely on in assessing the amount of restitution owed, and their information was specific to the property stolen. In contrast, Glaser testified about the cost of a regulated metal, and plumbing work that she had no personal knowledge about, and she had no

information about the costs associated with the specific damages Brazda caused to her property.

Brazda suggests that this case is more comparable to the facts in *Younger,* 320 Kan. at 141 (vacating restitution award, finding letter from insurance company failed to provide necessary details for amounts listed, including how amounts were calculated or which items each amount related to), and *State v. Union*, 319 Kan. 214, 224, 553 P.3d 320 (2024) (finding evidence that district court relied on failed to support its restitution order of one-half of losses rather than some other fraction of total amount). But having reviewed those cases, we are unpersuaded that they provide good authority for vacating the district court's judgment under the facts here.

*This case is distinguishable from the authorities above.*

We decide restitution on a case-by-case basis, according to the specific circumstances presented. The cases that both parties rely on offer only some guidance. Under the circumstances of this case, we agree that Glaser was positioned to best provide the district court with her anticipated cost for structural repairs.

When a burglar takes household items from one's home or damages the home in ways that the owner may readily fix, the owner likely has some knowledge of the cost of repairs, or the purchase price or replacement cost of items taken. In such cases, the owner's testimony may be corroborated at least in part by other reliable evidence, such as receipts or expert appraisals. See, e.g., *State v. Day*, No. 121,391, 2020 WL 5582347, at *3-4 (Kan. App. 2020) (unpublished opinion) (considering value of a house and items inside the house in an arson case and affirming restitution amount as supported by victim's testimony regarding a recent bank appraisal of the house and Google and eBay searches for property inside the house); *State v. Scales*, No. 85,322, 2001 WL 37132040, at *2 (Kan. App. 2001) (unpublished opinion) (affirming restitution amount where

8

evidence included victim's testimony, receipts for certain items and home repairs, and a list of other losses with corresponding values for each item).

But such corroboration is not readily possible here, where the items taken were copper pipes, and Brazda's removal of those pipes caused unique structural damage to the home. Glaser testified that getting an expert—a plumber—to assess the damages was not possible at the time. No contrary testimony was given. Because she lacked an expert opinion on damages, and lacked personal knowledge of the loss that Brazda had caused, she used the best resource available to her to estimate her damages. Brazda suggests nothing more that Glaser could have done.

The State correctly notes that the district court adopted the amount provided by Glaser and thus impliedly found her testimony credible. See *Dipman*, 2019 WL 2063647, at *3-4 (upholding $7,725 in restitution based on victim's testimony and itemized cost estimates about victim's stolen and damaged guns and ammunition when district court made specific credibility findings about the parties' testimonies). We do not revisit this credibility finding. See *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019) ("In reviewing a court's findings, an appellate court will not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact.").

Glaser testified that $7,500 was a low estimate of the costs that she believed she would encounter. She also provided some detail about the searches that she made when researching this matter. She testified that she searched for information related to a 2,000 square foot house and specified that she relied on "Forbes" as one of her sources. Although Glaser's testimony may lack the detail sometimes found in forming restitution awards, her testimony provided a defensible restitution figure under the circumstances. See *Younger*, 320 Kan. at 140 ("The appropriate amount is that which compensates the victim for the actual damage or loss caused by the defendant's crime."). The substantial competent evidence standard, which applies to our review of facts underlying the amount

of restitution awards, is a "low bar." *Stave v. Humphrey*, 320 Kan. 348, 353, 568 P.3d 506 (2025). We find it satisfied here.

*The lack of an order for joint and several liability is not error.*

Brazda next asserts that the district court abused its discretion by ordering him to pay restitution alone, instead of jointly and severally with Wright. Again, we review this decision for an abuse of discretion. We will thus uphold the decision unless Brazda shows some error of law or fact or that the district court's decision is arbitrary, fanciful, or unreasonable. See *State v. Spilman*, 63 Kan. App. 2d 550, 577, 534 P.3d 583 (2023), (citing *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 [2018]; *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 [2020]).

Brazda does not allege that any legal or factual errors affected the district court's decision. He claims only that the decision is unreasonable because he and Wright worked together as accomplices to steal items from Glaser's property. And Brazda correctly notes that in Wright's case, the district court ordered restitution jointly and severally with Brazda. But this is not a persuasive basis for reversing the district court's decision as unreasonable. See *State v. Wash*, 320 Kan. 646, 688, 571 P.3d 568 (2025) (abuse of discretion requires that no reasonable person would agree with district court's decision). Having reviewed the facts, we find no abuse of discretion in the district court's order that Brazda is separately liable to pay $7,500 as restitution in this case. Because the facts show that Brazda's criminal acts related to the theft of the copper pipes, it is reasonable to hold him accountable to pay for the losses caused by that crime.

But even if we found the decision unreasonable, any error by not imposing restitution jointly and severally is harmless. See K.S.A. 60-261. The lack of an order for joint and several liability causes no harm to Brazda. This is because a person subject to joint and several liability is legally obligated to pay the entire debt, which may be

10

enforced against any or all of the obligors at the creditor's option. See *In re Morgan*, 24 Kan. App. 2d 324, 325, 943 P.2d 77 (1997) (defining joint and several liability). So even if we were to remand for resentencing, requiring the trial court to award restitution jointly and severally with Wright, Glaser could still seek payment solely from Brazda. See *Spilman*, 63 Kan. App. 2d at 578 (finding decision not to impose restitution award jointly and severally harmless).

Affirmed.