NOT DESIGNATED FOR PUBLICATION

No. 124,599

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN B. CRAIGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed November 4, 2022. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

PER CURIAM: Dustin B. Craige appeals the district court's restitution order following his guilty plea to one count of fleeing or attempting to elude a law enforcement officer and one count of aggravated assault of a law enforcement officer. Craige stole a pickup truck and took it on a high-speed chase while attempting to escape law enforcement officers. Craige's actions destroyed the stolen pickup truck, as well as a Kansas Highway Patrol (KHP) vehicle, and caused the loss of items from the truck bed. The district court sentenced Craige to 53 months' imprisonment and, after conducting a hearing, ordered him to pay restitution in the amount of $4,312.95 to the KHP and

1

$5,355.25 to the pickup truck owner—$4,500 for the totaled truck, $705.25 for a lost chainsaw, and $150 for the towing fee. On appeal, Craige challenges the restitution order for the pickup truck and the chainsaw. He also raises constitutional challenges to the Kansas criminal restitution scheme. Finding no error or constitutional defects in the restitution order, we affirm the district court's judgment.

FACTS

In November 2020, Craige stole a 1993 Chevy 2500 pickup truck from Gary Colglazier. After Colglazier reported the truck missing, a KHP trooper began searching for it around the intersection of I-35 and K-130 in Lyon County. Upon locating the pickup truck, the trooper soon realized that Craige would try to get away, thus began a pursuit. Craige drove recklessly in his attempt to flee, driving into oncoming traffic and avoiding several tire deflating devices that had been laid down by other officers. Eventually, officers got Craige to stop by causing him to crash into a KHP vehicle, totaling out the pickup truck. After the truck was immobilized, Craige surrendered, and the KHP trooper arrested him. During the chase, Colglazier's new chainsaw was thrown out of the truck bed. An officer located the chainsaw and placed it on the side of the road, but it later came up missing, apparently stolen by a passerby.

The State charged Craige with one count of felony theft, two counts of felony fleeing or attempting to elude a law enforcement officer, and two counts of felony aggravated assault of a law enforcement officer. Craige later pled guilty to one count of felony fleeing or attempting to elude a law enforcement officer and one count of aggravated assault of a law enforcement officer in exchange for the State's agreement to dismiss the other charges. At the plea hearing, the parties told the district court that the amount of restitution was unsettled. The district court sentenced Craige to 53 months' imprisonment and ordered a restitution hearing.

At the restitution hearing, Craige agreed to pay for the repairs required for the KHP vehicle involved in the chase. The State then called Colglazier to testify about the losses he suffered as a result of Craige's criminal conduct. Colglazier testified that he had used his Chevy pickup truck mainly as a farm vehicle before Craige stole it and wrecked it. He explained that the damage was extensive—the tires were "blown out," the rims were "ruined," the frame, shocks, and steering columns were "crooked," and both the front and back end suffered collision damage—leaving the truck "nonfixable."

Colglazier testified that about a month after the incident, he replaced the pickup truck with a newer truck with similar mileage for $18,000, but he was not asking for that amount in restitution. He explained that a comparable "kick-around truck" used for farming was in high demand and difficult to find. Colglazier ultimately requested $4,500 in restitution for the value of the pickup truck that Craige destroyed. He also requested $150 for the cost of towing the broken truck. In response to Craige's questioning, Colglazier stated his $4,500 valuation stemmed from what he "thought it would be worth trying to replace it" and noted that he would not have sold the truck, even for $4,500. To rebut Colglazier's valuation of his truck, Craige introduced a Kelley Blue Book valuation, which estimated the value of the truck between $2,500 and $3,900.

Colglazier also testified about items in the truck that were lost during the chase, including two chainsaws (one new and one old), a toolbox, and a splitting ball. The new chainsaw was lost after it was thrown out of the bed of the pickup truck during the chase. A patrolman moved it to the side of the road, but somebody later took it before it could be recovered, and Colglazier was forced to purchase a replacement for about $750.

In ruling on the amount of restitution for Colglazier's pickup truck, the district judge explained:

"The issue before Court today is what is the true value to Mr. Colglazier of the vehicle. He testified he believed it was in the neighborhood of $4,500. I think I heard he wouldn't sell it for that, that was one of the comments he made. But—and then, of course, there's been a proffered Blue Book value, which could be up to $3,900 in a private sale arrangement.

"In reality what we have here is this truck is being used in his farming operation, probably close to on a daily basis, certainly on a weekly basis going out and just doing exactly what he described. Fixing fence, working in pastures, doing the sort of thing that he needs to do so he doesn't drive a brand new truck out there to do that kind of stuff, which is clearly what almost every farmer or rancher does in this area. So the truck has substantial utility and value to Mr. Colglazier because it's a very valuable piece of property.

"I—I actually believe that the value of Mr. Colglazier['s] truck probably is in the neighborhood of $4,500 because that's the value to him. And probably his restitution request is understated because he probably didn't have access to that truck for a period of time until he got a new truck, which would be loss of use, which was not claimed in this case.

". . . The value of the vehicle is more than what the Blue Book is simply because of what he uses it for and the fact that he can't replace it. I heard $18,000 here to replace it, which we know is a different truck and certainly not entitled to that. So I believe that reasonable cost is the $4,500 that he asked for and that's appropriate. So I'm going to give him the $4,500 for the truck as well."

The total balance of the restitution order included $4,312.95 to the KHP and $5,355.25 to Colglazier—$4,500 for the pickup truck, $705.25 for the lost chainsaw, and $150 for the towing fee. The district court ordered the restitution to be paid as a condition of postrelease supervision or sooner if the Department of Corrections placed Craige in a work release program. The district court also ordered the restitution to be paid first to Colglazier and then to the KHP. Craige timely appealed the restitution order.

4

RESTITUTION AWARD FOR THE PICKUP TRUCK

Craige first claims the district court abused its discretion in awarding $4,500 in restitution for the pickup truck. He argues the district court acted unreasonably in relying on Colglazier's estimation of the value of his totaled truck instead of the valuation that he presented from Kelley Blue Book, which was between $2,500 and $3,900. The State contends the district court could factor in, and rely on, Colglazier's testimony about the pickup truck's value to him, and the State asserts that it cannot be said that no reasonable person would agree with the district court's order.

Appellate courts use three standards in reviewing challenges to a restitution order depending on the contours of the question presented. *State v. Hall*, 297 Kan. 709, 711, 304 P.3d 677 (2013). The proper amount of restitution and the manner it is to be paid are matters entrusted to the district court's sound discretion based on the facts and circumstances of a given case. *State v. Alcala*, 301 Kan. 832, 836, 348 P.3d 570 (2015). A district court exceeds that discretion only if its ruling stems from an error of fact or law or if no reasonable person would agree with its decision. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018). Next, a district court's "factual findings underlying the causal link between the crime and the loss are reviewed for substantial competent evidence." *Alcala*, 301 Kan. at 836. Finally, appellate courts exercise unlimited review over any questions involving the interpretation of statutes. *Hall*, 297 Kan. at 712.

Under K.S.A. 2021 Supp. 21-6604(b)(1), when any person has been found guilty of a crime, the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime. The same rigidness and proof of value required in a civil action does not apply to determining restitution in a criminal case. *State v. Applegate*, 266 Kan. 1072, 1079, 976 P.2d 936 (1999). An appellate court should not disturb the district court's restitution award so long as it "'is

5

based on reliable evidence'" and "'yields a defensible restitution figure.'" *Hall*, 297 Kan. at 714 (quoting *State v. Hunziker*, 274 Kan. 655, 660, 56 P.3d 202 [2002]).

Craige's argument focuses on the measure of restitution that the district court ordered related to the pickup truck that he stole. "The measure of restitution to be ordered is the amount that reimburses the victim for actual loss suffered" from the defendant's criminal act. *Hall*, 297 Kan. at 712. Kansas courts have consistently held that the usual standard for calculating loss or damage of property is "'fair market value,'" i.e., how much the property lost would have commanded in an exchange between a willing seller and buyer. 297 Kan. at 713. But the fair market value approach is not the only appropriate basis to calculate restitution, and it is not required under the language of the restitution statute. See K.S.A. 2021 Supp. 21-6604; *Hall*, 297 Kan. at 713-14. Rather, "[r]estitution can include costs in addition to and other than fair market value" and "[t]he appropriate amount is that which compensates the victim for the actual damage or loss caused by the defendant's crime. And the most accurate measure of this loss depends on the evidence before the district court." 297 Kan. at 713-14; *State v. Allen*, 260 Kan. 107, 115-16, 917 P.2d 848 (1996) ("Restitution . . . can include not only the fair market value of the property lost, but other costs in connection with the theft as well.").

The district court was presented with two pieces of evidence on the value of the totaled pickup truck: (1) Colglazier's estimation of its value, which stemmed from the amount he believed it would cost to replace it with an identical vehicle and (2) the assessment from Kelley Blue Book. The district court ultimately based its order on Colglazier's replacement-based valuation, which accounted for the high demand for similar pickup trucks because of their specialized usage on farms. Colglazier explained that he had not worked in automotive sales but derived the $4,500 figure by "[j]ust trying to find one to replace it." He clarified that he came up with that valuation because "[a] four-wheel drive work truck like that is—falls in the price category of a lot of people and they're kind of in demand for just a kick-around truck on a farm[.]"

6

The district judge voiced his agreement with Colglazier's valuation, noting the substantial utility of the truck and the high demand for similar vehicles increased its value. As the court stated, "The value of the vehicle is more than what the Blue Book is simply because of what he uses it for and the fact that he can't replace it." This court has held that a victim may express an opinion on the value of an item that was stolen or damaged by the defendant, leaving a question of fact for the district court to either accept or reject the value opined by the owner when deciding on the amount of restitution. *State v. Hinckley*, 13 Kan. App. 2d 417, 419, 777 P.2d 857 (1989).

Craige's main argument is that the district court did not rely on the Kelley Blue Book valuation—a figure Craige asserts constituted the fair market value of the pickup truck. Our Kansas Supreme Court has rejected the notion that a district court is statutorily mandated to follow a hard and fast measure for setting the value of a victim's loss in crafting a restitution order. *Hall*, 297 Kan. at 712. The court also explained that a strict adherence to the concept of fair market value oversimplifies the task of fashioning an equitable amount of restitution and potentially leads to unpredictable results. 297 Kan. at 713. Thus, the district court was not constrained to merely accepting the Kelley Blue Book value that Craige presented.

Craige also alleges that the district court should not have relied on the replacement value to determine the proper restitution amount for the pickup truck. But the district court did not adopt such an approach. While it is true that Colglazier's valuation stemmed from his estimation of what he believed it would have cost to replace his old pickup truck, the district court found that Colglazier was not entitled to the amount that he was forced to spend on replacing it, $18,000. Moreover, Craige's claim that "the State presented no evidence about how much a farm truck is worth" is simply not supported by the record. As outlined above, Colglazier explained what he believed the value of his totaled truck to be based on his ability to find a similar farm truck. And the district court credited his testimony about the utility and importance of such a vehicle to farm

operations in deriving an equitable valuation. It cannot be said that no person would agree with the district court's determination that the value of the pickup truck was $4,500.

The district court's restitution award for the pickup truck was based on reliable evidence presented at the hearing yielding a defensible restitution figure. *Hall*, 297 Kan. at 714; *Hunziker*, 274 Kan. at 660. This is the standard appellate courts use in reviewing a district court's restitution order. Based on this standard, we conclude the district court did not abuse its discretion in awarding $4,500 restitution for the pickup truck.

RESTITUTION AWARD FOR THE CHAINSAW

Craige next claims the district court erred in awarding restitution for the lost chainsaw without any nexus or causal link between Craig's crimes of conviction and the loss of the chainsaw. The State asserts that any error in ordering restitution for the chainsaw was invited by Craige. But on the merits, the State asserts that Craige's crime of fleeing or attempting to elude a law enforcement officer was the proximate cause of the loss of the chainsaw.

The State first argues that at the restitution hearing, Craige "never objected to the amount of restitution for the chainsaw and stated the only amount being objected to was the amount requested for the truck." As a result, the State argues that Craige "invited any error there may have been in awarding the amount for the chainsaw and cannot now complain about the amount on appeal."

A party "may not invite an error and then complain of the error on appeal." *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021). Whether the doctrine of invited error applies is a question of law subject to unlimited review. 312 Kan. at 735.

The State's complaint is better categorized as waiver instead of invited error. In any event, Craige's general objection to the restitution award and request for a hearing sufficiently preserved the chainsaw issue for appeal. Colglazier testified about his loss of the chainsaw and its value at the hearing. Evidence was presented for the district court to enter a restitution award for the chainsaw, and the record is sufficient for our court to review the restitution order. We reject the State's assertion of invited error.

Turning to the merits, Craige does not challenge the amount of restitution the district court awarded for the chainsaw. The issue is whether there is a causal connection between the loss and Craige's conviction of fleeing or attempting to elude a law enforcement officer. As noted above, a district court's "factual findings underlying the causal link between the crime and the loss are reviewed for substantial competent evidence." *Alcala*, 301 Kan. at 836. "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). When analyzing whether substantial competent evidence supports a court's ruling, appellate courts do not reweigh the evidence or assess the credibility of witnesses. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

K.S.A. 2021 Supp. 21-6604(b)(1) authorizes the district court to order restitution for the damage or loss "caused by the defendant's crime." Our Kansas Supreme Court has held that the statute does not require "the crime of conviction have a *direct* causal link to any damages." *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018). Rather "the causal link between a defendant's crime and the restitution damages for which the defendant is held liable must satisfy the traditional elements of proximate cause:  cause-in-fact and legal causation." 307 Kan. at 655. To establish causation-in-fact, there must be proof that it is more likely than not that, but for the defendant's conduct, the victim's damages would not have occurred. 307 Kan. at 654. Even if a defendant's conduct is the cause-in-fact of the victim's loss, legal causation restricts liability to situations when "it

was foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable." 307 Kan. at 655.

Craige's actions were both the cause-in-fact and the legal cause of Colglazier's loss of his chainsaw. There is no question that but for Craige stealing the pickup truck and taking it on a police chase, the chainsaw would not have come out of the truck bed and been left by the side of the road. Craige focuses his attack on the foreseeability of the ultimate chain of events that deprived Colglazier of his property. He argues that "it was not foreseeable that, as a result of either fleeing the police or committing aggravated assault against a law enforcement officer, the chainsaw would be stolen."

But Craige's argument is flawed. It was foreseeable that Craige's decision to attempt to elude law enforcement in Colglazier's truck created a substantial risk of harm to both the pickup truck and anything inside it, particularly those items, such as the chainsaw, that were in the truck bed. This is especially true considering the dangerous manner of driving Craige engaged in while attempting to escape from the police. Moreover, this same course of criminal conduct foreseeably led to both the destruction of the pickup truck and the destruction and loss of the property within it.

Craige tries to draw a line with the loss of the chainsaw because another person took it from the side of the road after it was flung from the bed of the truck. Granted, the theft of the chainsaw by another person was an intervening event. But such a result was foreseeable, and it did not break the causal connection between Craige's conviction and Colglazier's loss. Colglazier testified the chainsaw was a high value piece of machinery, and it is unsurprising that a less-than-scrupulous person coming across such an item on the side of the road might stop and take it. There is no requirement that a defendant's criminal conduct is the direct cause of a victim's loss, the loss need only be foreseeable.

The causal link between Craige's conviction of fleeing or attempting to elude a law enforcement officer and Colglazier's loss of his chainsaw satisfies the traditional elements of proximate cause. There was substantial competent evidence to support the district court's conclusion of this causal link. Craige does not challenge the amount of restitution the district court awarded for the chainsaw. As a result, we conclude the district court did not err in awarding $705.25 restitution for the lost chainsaw.

CONSTITUTIONAL CHALLENGES TO KANSAS' CRIMINAL RESTITUTION SCHEME

For the first time on appeal, Craige raises two constitutional claims. First, he argues that if restitution is a civil remedy, then K.S.A. 2021 Supp. 21-6604(b)(1) violates section 5 of the Kansas Constitution Bill of Rights. Second, he argues that if restitution is a criminal penalty, then the statute violates the Sixth Amendment to the United States Constitution and section 5 of the Kansas Constitution Bill of Rights. Craige concedes the Kansas Supreme Court recently rejected both arguments in *State v. Arnett*, 314 Kan. 183, 189-93, 496 P.3d 928 (2021), *cert. denied* 142 S. Ct. 2868 (2022).

Although Craige did not raise these constitutional challenges before the district court, we will consider the claims for the first time on appeal because the newly asserted claims involve only questions of law arising on proved or admitted facts and because consideration of the claims is necessary to serve the ends of justice or to prevent the denial of fundamental rights. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Determining a statute's constitutionality is a question of law subject to unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

*Section 5 claim*

Our Supreme Court recently found that the Kansas restitution statutes violate section 5 of the Kansas Constitution Bill of Rights to the extent they allow a conversion

11

of any restitution orders into civil judgments. *Arnett*, 314 Kan. at 189-93. This is because the scheme effectively bypasses the traditional function of juries to determine civil damage. 314 Kan. at 194. But our Supreme Court determined that the proper remedy was to sever the offending portions of the statutory scheme, rather than to vacate every restitution order. 314 Kan. at 194-95. The district court did not order that the restitution award in Craige's case would be converted to a civil judgment.

Thus, although Kansas' restitution statutes implicate section 5, the severance of the unconstitutional provisions renders Craige's restitution order constitutionally valid. See 314 Kan. at 194-96; *State v. Owens*, 314 Kan. 210, 242-44, 496 P.3d 902 (2021). This court is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). We have no reason to find that our Supreme Court is departing from its recent holding in *Arnett*.

*Sixth Amendment claim*

Craige's argument under the federal Constitution is likewise meritless as our Kansas Supreme Court has held that restitution does not implicate a defendant's Sixth Amendment right to a jury trial as contemplated by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny. *State v. Brown*, 314 Kan. 292, 308, 498 P.3d 167 (2021); *State v. Robison*, 314 Kan. 245, 249-51, 496 P.3d 892 (2021), *cert. denied* 142 S. Ct. 2868 (2022); *Arnett*, 314 Kan. at 186-88. This is because restitution is not considered punishment. Again, this court is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position. *Rodriguez*, 305 Kan. at 1144. We have no reason to find that our Supreme Court is departing from its holdings in these recent cases.

Affirmed.